UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

AQUARIUS AQUA USA, INC.,            CASE NO. 1:20-cv-22281-MGC
a Delaware corporation,

      Plaintiff,

v.

M/Y VOGUE/JIMBO, a Sunseeker 64", its
engines, equipment, boats, tackle, apparel,
furniture, art, appurtenances, cables, etc.,
*in rem*, & PETHŐ AXEL, an individual;
AUGUSTUS J. STERGIOS, an individual;
MARINE CONSULTING INC.,
a New York corporation; MARINE CUSTOM
HARDWARE INC., a Florida corporation;
MARINE CONSULTING FLOOR PLAN
HOLDING LLC, a Florida limited liability
company; RICK OBEY, an individual; and
SPECIALIZED NAUTICAL SERVICES,
INC., a Florida corporation, *in personam*,

      Defendants.
_____/

## MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND DUE TO LACHES WITH PREJUDICE

Defendant, Augustos Stergios, by and through undersigned counsel files his Motion to Dismiss the action, *with prejudice*, and states as follows:

### I.  Subject Matter Jurisdiction

**A. Rule**

Federal courts have an obligation to examine their own jurisdiction over a case. *Deroy v. Carnival Corp.*, 963 F.3d 1302, 1311 (11th Cir. 2020); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). Subject-matter jurisdiction underlies a court's power to hear a case. *Deroy v. Carnival Corp.*, 963 F.3d 1302, 1311 (11th Cir. 2020), citing *United*

*States v. Cotton*, 535 U.S. 625, 630, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002). The plaintiff bears the burden of affirmatively asserting facts that show the existence of jurisdiction and including "a short and plain statement of the grounds upon which the court's jurisdiction depends." *Id. also see Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994); Fed. R. Civ. P. 8(a). It is the facts and substance of the claims alleged, not the jurisdictional labels attached, that ultimately determine whether a court can hear a claim. *See Taylor*, 30 F.3d at 1367 (plaintiff must allege facts demonstrating jurisdiction).

### B. Facts

On June 2, 2020, Plaintiff filed a single count complaint against Mr. Stergios (and the Defendant Vessel) to quiet title to the Defendant Vessel. [ECF No. 1, Count I, Pg. 5]. The sole basis for subject matter jurisdiction alleged is 28 U.S.C. § 1333, i.e. sounding in admiralty. [ECF No. 1, ¶ 1]. On June 15, 2020, Plaintiff sought by motion to arrest the Defendant Vessel pursuant to Rule C. [ECF No. 4]. On January 15, 2020 after nearly seven months and a post-seizure hearing put in abeyance by the Court, Plaintiff has now simply abandoned its efforts to arrest, serve and bring the Vessel into the jurisdiction of this Court. [ECF No. 43].

### C. Analysis

Plaintiff has failed to serve the Vessel and now abandoned its efforts to do so. It is really of no moment whether the Plaintiff chose to proceed and attempt to obtain a warrant of arrest in rem and serve the Vessel as Rule C provides that a Vessel may only be arrested if the Plaintiff alleges a maritime lien or if a United States statute provides for a right of arrest *in*

*rem*.[1] Plaintiff has no maritime lien claim, has not alleged a maritime lien claim, has cited no law that gives rise to a maritime lien claim. [DE 1]; *Vestoil, Ltd. v. M/V M Pioneer*, 148 F. App'x 898 (11th Cir. 2005); *Liberian Int'l Ship & Corp. Registry, LLC v. Allfirst Bank* (*In re Millenium Seacarriers, Inc.*), No. 02 CV 7108 (RPP), 2004 U.S. Dist. LEXIS 366 (S.D.N.Y. Jan. 12, 2004).

In fact, it is well settled in the 11th Circuit that no action (*including for quiet title*) arising from an agreement for the purchase and sale of a vessel gives rise to admiralty jurisdiction. "This circuit's law is 'firmly established' that a contract for the sale of a vessel is not within federal courts' admiralty jurisdiction." *Hatteras of Lauderdale, Inc. v. Gemini Lady*, 853 F.2d 848, 850 (11th Cir. 1988) (citing *Jones v. One Fifty Foot Gulf Star Motor Sailing Yacht*, Hull No. 01, 625 F.2d 44, 47 (5th Cir. 1980) ("the well-established general rule that admiralty will not entertain suits where the substantive rights of the parties flow from a contract to sell or construct a vessel.")). *See Gaster Marine Recovery & Sales. Inc. v. M/V "The Restless I"*, 33 F. Supp. 2d 1333, 1334, 1999 AMC 1809 (S.D. Fla. 1998).

"The mere fact that a ship is involved will not bring the cause within the jurisdiction of the admiralty court." *Richard Bertram & Co. v. The Yacht, Wanda*, 447 F.2d 966, 967-68 (5th Cir. 1981). ("…whether this suit is viewed as one to enforce a security interest or mortgage on a vessel, a suit to try **or quiet title**, a suit for breach of a contract of sale, or a suit upon a

---

[1] **Rule C. In Rem Actions: Special Provisions**

(1) When Available. An action in rem may be brought:

    (a) To enforce any maritime lien;

    (b) Whenever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto.

contract to construct a vessel, it is not within the admiralty jurisdiction of this Court) (emphasis added).

### D. Conclusion

As such, this Court has no jurisdiction over the Defendant Vessel or the claim for quiet title – the only claim against Mr. Stergios. The case should be dismissed for lack of subject matter jurisdiction.

## II. Laches

### A. Rule

The equitable doctrine of laches will bar a claim when three elements are present: "(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Venus Lines Ag., Inc. v. CVG Int'l Am., Inc.*, 234 F.3d 1225, 1230 (11th Cir. 2000); *Kason Indus., Inc. v. Component Hardware Group, Inc.*, 120 F.3d 1199, 1203 (11th Cir.1997). In admiralty claims, the equitable doctrine of laches generally controls whether a party's delay in bringing a claim should bar the suit. *See, e.g., Puerto Rican-American Ins. Co. v. Benjamin Shipping Co.,* 829 F.2d 281, 283 (1st Cir.1987); *Azalea Fleet, Inc. v. Dreyfus Supply & Machinery Corp.*, 782 F.2d 1455, 1458 (8th Cir.1986); *Firearms Import & Export Corp. v. Lykes Bros. Steamship Co.*, 458 F. Supp. 88, 90 (S.D.Fla.1978) (holding doctrine of laches applies in absence of statute of limitations). Venus argues, however, that courts use statutes of limitations periods in applying laches.

In admiralty claims, Courts first look to the analogous statute of limitations only as a benchmark in determining whether to apply the doctrine of laches and primarily to determine where rests the burden of proof. When a plaintiff files a claim in admiralty within the analogous statutory period, it is not automatically timely; the burden of proof simply shifts to

4

allow the defendant to show inexcusable delay and resulting prejudice in order to establish a laches defense." *Mecom v. Levingston Shipbuilding Co.*, 622 F.2d 1209, 1215 (5th Cir.1980) (quoting *Barrois v. Nelda Faye, Inc.,* 597 F.2d 881, 885 (5th Cir.1979)); *see also TAG/ICIB Servs., Inc. v. Pan American Grain Co.*, 215 F.3d 172, 175 (1st Cir.2000*); Puerto Rican-American Ins. Co.*, 829 F.2d at 283; *Azalea Fleet, Inc.*, 782 F.2d at 1458-59.

### B. Facts

In this matter, the Plaintiff filed a Complaint which was verified by its alleged principal, Tomas Plutzer. [ECF No. 1, Pg. 10]. Plutzer alleges his purported company acquired the Vessel on October 20, 2015. ¶13. Plaintiff then swore through verification that he "contracted with PETHŐ AXEL, who was to care for, maintain, and set up chartering for M/Y VOGUE/JIMBO during the long periods of time when Plaintiff was not using the vessel," that "Plaintiff placed its trust in PETHŐ AXEL to maintain and set up chartering for M/Y VOGUE/JIMBO while Plaintiff's managers were out of the country" and ***importantly*** that "Plaintiff had an oral contract with PETHŐ AXEL to charter and maintain M/Y VOGUE/JIMBO in exchange for $200,000.00 USD per year payable to Plaintiff." ECF No. 1, ¶17, 32, 33. Plaintiff then alleged that "PETHŐ AXEL took steps in furtherance of this contract by taking possession of M/Y VOGUE/JIMBO and by entering into an agreement with a chartering company to charter M/Y VOGUE/JIMBO." ECF No. 1, ¶ 34. Finally, and of utmost importance to this analysis Plaintiff swore that it "was ***never paid*** any funds pursuant to the contract it had with PETHŐ AXEL." ECF No. 1, ¶ 35. (emphasis added).

This means that despite giving the Vessel to Mr. Axel in 2015 in exchange for an alleged obligation by Axel to pay Plaintiff $200,000 per year, no payments were ever made to the Plaintiff, yet Plaintiff apparently sat on its hands with the Vessel in the possession of the Mr. Axel and did *nothing* for over four and a half years before bringing suit in this court. Plaintiff did not file suit,

5

did not file any corporate paperwork, did not receive any funds from Axel, did not visit the Vessel, did not even make any payments to operate the vessel (such as insurance, crew, dockage, repairs, upkeep, maintenance, provisioning, fuel, etc.) – all since 2015. This would mean that the Plaintiff knew of the issues with Axel and did nothing until June 2020 when it filed this Complaint. The Court may be asking itself what is the world Mr. Plutzer was doing for five years he owned the boat if he never made a payment on it since 2015, never possessed it since 2015, never boarded it since 2015, never made any payments on it for any classic operational costs since 2015 and never received any payments on the vessel since 2015. Perhaps never before has such a strange course of alleged boat ownership existed. And after the Court asks where was Mr. Plutzer, which remains completely unexplained, the Court may also ask what happened in the interim while he sat on his hands doing nothing. In the interim, the person that the Plaintiff put in charge of the yacht, Mr. Axel, appeared on the corporate paperwork was the President and Director of the company and in February 2017, sold the Vessel to Mr. Stergios, who subsequently paid money to acquire the Vessel, registered the Vessel, sacrificed his credit to mortgage the Vessel, and then put in nearly $350,000 into the degraded vessel to repair, restore, refit, and operate the Vessel over a period of several years of ownership – all greatly prejudicing Mr. Stergios, all while Plaintiff sat on its hands doing nothing. Then, Mr. Stergios sold the Vessel to Marine Consulting, Inc. over two years later in March 2019, who then apparently mortgaged and also subsequently sold the Vessel in 2020 – all before this lawsuit was filed. During this entire time, Mr. Plutzer, who now comes to the Court claiming he is entitled to quiet title to the Vessel did nothing all along – even though he knew the Vessel was in possession of person who did not pay what Pluzter verified in his complaint was a $200,000.00 annual amount due for the years 2015, 2016, 2017, 2018, 2019 and 2020, totaling over $1,000,000.00.

### C. <u>Analysis</u>

Amazingly, Plaintiff now seeks to come to the court *after* Mr. Stergios purchased the Vessel from Plaintiff nearly four years ago, through documents signed by Mr. Axel who was given the Vessel by Plutzer nearly five years ago, who appeared on the Delaware corporate records as President and Director at the time of the sale because Plutzer did nothing, and after Mr. Stergios mortgaged the Vessel, put nearly $350,000 into the Vessel, and sold the Vessel onward. This all occurred after Mr. Plutzer did not receive $200,000 contract fee in 2015, did not receive his $200,000.00 contract fee in 2016, and then did not receive his contract fees in 2017-2020 either. Yet, Plutzer did nothing. And his delay in bringing a claim against Axel for failure to pay the contract for the Vessel, (not to mention taking possession of his purported vessel for over five years, making a single payment on the vessel in over five years or even being aboard it in over five years), created an inexcusable delay that unduly prejudiced Mr. Stergios (not to mention the other Defendants). Had Mr. Plutzer simply acted timely in any way shape or form, as any reasonable person would have, this litigation would be averted and Mr. Stergios, an innocent purchaser, then owner and ultimately seller would never face these legal allegations.

### D. <u>Conclusion</u>

It cannot be argued that Plutzer "(1) delayed in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Venus Lines Ag., Inc. v. CVG Int'l Am., Inc.*, 234 F.3d 1225, 1230 (11th Cir. 2000). As such, this cause of action should be dismissed with prejudice.

### **REQUEST FOR HEARING**

Defendant respectfully requests an evidentiary hearing from the Court to aid the Court.

Dated: February 5, 2021.                                Respectfully submitted,

                                                 **WAGNER LEGAL**
Attorney for Defendant Stergios
3050 Biscayne Blvd., #904
Miami, FL 33137
Telephone: (305) 768-9247
Facsimile: (305) 306-8598
By: /s/ Scott A. Wagner
Scott Wagner, Esq.
Florida Bar No. 10244
sw@WagnerLegalCo.com

## CERTIFICATE OF SERVICE

I hereby CERTIFY that on this 5th day of February 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record.

                                                         /s/ Scott A. Wagner